UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LT. JOHN THOMAS BERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 8-157-B-W |
| | ) | |
| LARRY COSTA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDED DECISION**

John Berry, a Maine resident and a reserve and active duty member of the United States Army, brought this action in Maine state court for alleged breach of contract/promissory estoppel, fraud, negligence/negligent misrepresentation, intentional or negligent infliction of emotional distress, defamation, and "malice" against WorldWide Language Resources, Inc., his former employer, and Larry Costa, its chief executive officer.  The events giving rise to the lawsuit occurred between September 2007 and the early part of 2008 and are directly related to Berry's employment duties for WorldWide in Afghanistan.  WorldWide is a Massachusetts corporation and its physical operations have been located in North Carolina since June 1, 2007.  Costa was a legal resident of Florida in 2006 and is relocating to New Hampshire at the present time.  WorldWide's principal place of business was formerly in Rumford, Maine.  Costa continues to own real estate in Oxford County, Maine.  The defendants have removed the case to this court based upon diversity of citizenship and jointly moved to dismiss the action based upon lack of personal jurisdiction, insufficiency of service of process, and the doctrine of forum non conveniens.  Neither the plaintiff nor the defendants present a separate jurisdictional analysis for Costa and WorldWide and for purposes of this recommended decision, I have analyzed both

defendants' contacts as unitary in nature. Both defendants are named in each count of the complaint. I now recommend that the Court deny the motion.

## The Allegations and Affidavits

When facing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction is proper. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). When an evidentiary hearing is not held to determine whether personal jurisdiction exists, the plaintiff must make a prima facie showing of jurisdiction by "citing to specific evidence in the record that, 'if credited, is enough to support findings of all facts essential to personal jurisdiction.'" Snell v. Bob Fisher Enter., Inc., 115 F. Supp.2d 17, 20 (D. Me. 2000) (quoting Boit v. Gar-Tec Prod., 967 F.2d 671, 675 (1st Cir. 1992)). When determining whether the plaintiff has made the requisite prima facie showing, the court considers the pleadings, affidavits, and exhibits filed by the parties. Snell, 115 F. Supp.2d at 20. For purposes of such a review, the plaintiff's properly supported proffers of evidence are accepted as true and evidentiary disputes are resolved in favor of the plaintiff. However, unsupported allegations in the pleadings need not be credited. Id.

According to Berry, the defendants contacted him on approximately September 1, 2007, and offered a job as a sub-contractor site manager in Afghanistan, said job to commence by September 15, 2007. (Compl. ¶ 5.) Berry accepted the job offer. (Id. ¶ 6.) Based upon the job offer Berry deferred his then pending active duty orders from February 10, 2008, until September 23, 2008, and did so with the knowledge and consent of the defendants. (Id. ¶ 7.) Due to delays occurring because of the defendants, Berry did not commence his sub-contract until November 22, 2007. (Id. ¶ 8.) Between November 2007 and January 2008 Berry worked as a site manager for one of WorldWide's facilities in Afghanistan. (Id. ¶ 9.) In December 2007 and January

2008, the defendants, through their agents, offered oral extensions of the sub-contractor agreement first through the end of April 2008 and then through August 15, 2008, in anticipation of Berry's September 23 active duty start.  (Id. ¶ 10.)  Following the discussions regarding contract extensions, Berry was requested by the defendants to commit or to not disclose a series of fraudulent and illegal acts regarding the defendants' contractual relationship with the United States government and military, including the multiple billing of translators, the intentional misclassification of linguists, and the use of incompetent translators.  (Id. ¶ 11.)  Berry refused to commit these acts.  He was on active duty reserve status at the time of these events and remained subject to the provisions of the Uniform Code of Military Justice.  (Id. ¶ 12.)  Due to Berry's refusal to commit these illegal acts his contracts were not honored by the defendants and he was requested to leave Afghanistan, initially at his own expense, in violation of the defendants' contractual obligation to transport him to and from Afghanistan.  (Id. ¶ 13.)  Berry further alleges that because he would not commit fraudulent and illegal acts for the defendants they began a campaign of harassing him while he remained stationed in Afghanistan, including denying him access to a defensive weapon when in a hostile area, stripping him of his position as site manager, directing him to return to the United States immediately, threatening to deprive him of his identification and stranding him in a foreign country, and defaming and slandering him to representatives of the Department of Defense by incorrectly stating he had refused offered contract extensions.  (Id. ¶ 28.)

       In support of their motion to dismiss the defendants have filed three affidavits, including the affidavit of Larry Costa.  Costa avers that in 2006 WorldWide's principal place of business was Rumford, Maine, and it continued to do business there until May 1, 2007.  The company has had no operations in Maine since then.  (Costa Aff. ¶ 4, Doc. No. 5-3.)  In the Spring of 2006

Berry, in his capacity as a military recruiter, contacted Costa by telephone in Maine and tried to recruit him for reserve military duty. (Id. ¶ 5.) During the course of this conversation Berry learned about Costa's work with WorldWide and he asked Costa if he could submit a resume to Costa's company. Costa told him that WorldWide was always happy to receive the resumes of applicants with military backgrounds. (Id. ¶ 7.) In September 2007, when Costa was reviewing paperwork, he noted that WorldWide had in fact received a resume from Berry. (Id. ¶ 8.) Costa contacted Berry and advised him WorldWide had relocated to North Carolina. Berry indicated he was still interested in a position and arrangements were made to fly him to North Carolina for a job interview. (Id. ¶ 9.) Berry interviewed with several key people but ultimately he was called and told that no offer would be made. (Id. ¶¶ 10-11.) Berry then contacted Costa by means of a lengthy e-mail and pleaded for a job. He was subsequently hired by WorldWide. (Id. ¶¶ 11-12.) Berry went to North Carolina and signed an employment contract that states it is governed by North Carolina law. (Id. ¶ 13.) Berry was deployed to Afghanistan and, thereafter, all further communications with him were made in and directed to him in Afghanistan. (Id.)

      Defendants also supply the affidavits of Gene Battistini and Mary Arsenault. Battistini is a WorldWide employee who confirms the salient facts about WorldWide's corporate move to North Carolina and provides some detail regarding the circumstances of Berry's employment difficulties in Afghanistan. (Battistini Aff. ¶¶ 4-8, Doc. No. 5-4.) Ms. Arsenault indicates that she works at the office of a different business located on River Street in Rumford, Maine, near where WorldWide once had an office. (Arsenault Aff. ¶ 2, Doc. No. 5-5.) On April 25, 2008 someone left a copy of a summons directed to Larry Costa, personally, with her. (Id.) Arsenault goes on to aver that she has no knowledge that Costa ever lived at that address, that the address is

not currently a business location for WorldWide, and that she is not an authorized agent for service of process. (Id. ¶¶ 3-5.)

Berry has filed a responsive affidavit. He avers that on at least three occasions he received telephone calls from Larry Costa and other representatives of WorldWide soliciting his employment with their company. Berry says he never solicited employment but rather was solicited by defendants by means of telephone calls placed by them to his home in the State of Maine. He relates that he was also telephoned and e-mailed in Maine specifically to discuss and communicate the terms of employment and to arrange logistics for his travel to North Carolina. His travel to and from Maine to North Carolina was paid for by WorldWide. (Berry Aff. ¶ 3, Doc. No. 9.) Berry was advised by Costa that Costa maintains a home in the State of Maine and that WorldWide's offices and operations for many years had been based in the Rumford area. (Id. ¶ 4.)

Berry's counsel has also filed his own affidavit. According to counsel's research in the Oxford County Registry of Deeds, defendant Lawrence Costa owns two parcels of real estate in the Town of Andover and both Costa and WorldWide owned other parcels of land in the Rumford area until 2005. (VanDyke Aff. ¶ 2, Doc. No. 10.) Counsel also avers that WorldWide continues to be chartered as a Maine foreign business corporation and maintains a registered agent in the State of Maine. (Id. ¶ 3.) In the past four years both defendants have either sued others or been sued by others in the courts of Maine on at least four occasions. (Id. ¶ 4.) Counsel also notes that as of the present he knows of no one resident in North Carolina who is likely to testify in this matter. (Id. ¶ 5.)

With their reply the defendants file two additional items of evidentiary significance. One is a copy of a record from the Maine Secretary of State's Office showing that at least as of June

21, 2008, at 15:27:21 hours, WorldWide's authority as a foreign business corporation had been withdrawn. (Me. Bureau of Corps., Elections and Comm'ns Info. Summary, Doc. No. 12-2.) Defendants also filed another affidavit by Larry Costa, identical to the affidavit originally filed in support of the motion to dismiss. (Costa Aff., Doc. No. 12-3.) It does nothing to clarify *when* the authority to do business in Maine was withdrawn although defendants' memorandum suggests that it was over one year ago. (Reply Mem., Doc. No. 12 at 1.)

A.   **Personal Jurisdiction**

This Court outlined the personal jurisdiction test to be applied in diversity suits as follows:

> The personal jurisdiction of a federal court sitting in diversity is equivalent to that of a state court sitting within the forum. Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996). Thus, to establish personal jurisdiction over Defendant, Plaintiff must demonstrate both that Maine's long-arm statute grants jurisdiction and that exercise of jurisdiction under the statute is consistent with the Due Process Clause of the United States Constitution. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002). Because Maine's long-arm statute is coextensive with the permissible exercise of personal jurisdiction under the Constitution, the due process inquiry controls in the present case. See 14 M.R.S.A. § 704-A (Supp. 2003); Murphy v. Keenan, 667 A.2d 591, 593 (Me. 1995). Two means of establishing jurisdiction over Defendant's person are available under the Fourteenth Amendment: specific and general jurisdiction.

Heller v. Allied Textile Cos., 276 F. Supp. 2d 175, 182 (D. Me. 2003). General jurisdiction refers to an exercise of personal jurisdiction premised on the fact that the defendant has continuous and systematic contacts with the forum state, whereas specific jurisdiction refers to an exercise of jurisdiction premised on the fact that the lawsuit at issue arises directly out of the defendant's contacts with the forum state, even though the defendant is not otherwise within the general jurisdiction of the forum state. Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 135 (1st Cir. 2006). In either situation, the non-resident defendant's forum contacts must be purposeful in order to justify an exercise of personal jurisdiction. Id. Finally, even if the

defendant's forum contacts are purposeful, there are certain circumstances in which an exercise of personal jurisdiction over the defendant will not be reasonable or, alternatively stated, will be inconsistent with "traditional notions of fair play and substantial justice." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

Another judge of this Court has pointed out that when this Court's subject matter jurisdiction is based upon diversity of citizenship, the federal court asserts personal jurisdiction in accordance with both state law and the Fourteenth Amendment's due process clause, just as if it were a state court. Me. Helicopters, Inc. v. Lance Aviation, ___ F. Supp. 2d ___, Civ. No. 08-131-P-H, 2008 U.S. Dist. Lexis 50124, *5, 2008 WL 2588065, *2 (D. Me. June 30, 2008). In Maine, a state court will exercise specific jurisdiction over a defendant when: "(1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice." Connelly v. Doucette, 2006 ME 124, ¶ 7, 909 A.2d 221, 223 (Me. 2006). Because Maine's three-part test differs in its emphasis from the First Circuit test, and because both methods of analysis presumably comply with Fourteenth Amendment due process concerns, it is important in a diversity case, when this Court becomes the functional equivalent of the state court, to make sure that a Maine court would exercise jurisdiction under the Law Court's formulation. Me. Helicopters, 2008 U.S. Dist. Lexis 50124, *5-14, 2008 WL 2588065, *2-4 (collecting and analyzing decisions of the Maine Law Court applying the three-part test outlined above). Having reviewed the Maine precedents cited by Judge Hornby in Maine Helicopters, I am satisfied that if

this court can properly exercise jurisdiction under the First Circuit formulation, the Maine Law Court would also exercise personal jurisdiction over the defendant.

Berry argues that this Court has specific jurisdiction over these defendants because they "reached into" Maine for the very purpose of soliciting and then hiring Berry, a Maine resident, to come and work for them. His argument is a specific jurisdiction argument and, therefore, I will apply the principles of specific jurisdiction in the context of a contract claim to the prima facie facts put forth by Berry, viewing that disputed evidence in the light most favorable to Berry.

The First Circuit's Fourteenth Amendment due process test for specific jurisdiction requires a tripartite analysis. Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). The first step is to determine whether Berry's claim "directly relates to or arises out of defendant[s'] contact with the forum." Id. Next, the court must be satisfied that those contacts by defendants "constituted purposeful availment of the benefits and protections afforded by the forum's laws." Id. Finally, I must assess the overall reasonableness of an exercise of jurisdiction in light of five "gestalt factors" that are meant to ensure adherence to our system's "traditional notions of fair play and substantial justice." United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St., 960 F.2d 1080, 1088 (1st Cir. 1992). They are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the several states in promoting substantive social policies. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

I turn first to the question of whether the defendants' contacts are sufficiently related to the subject matter of the Berry complaint.  As the First Circuit has noted:  "We have approached the relatedness inquiry with slightly different emphases when the plaintiff asserts a contract claim than when she asserts a tort claim:  if a contract claim, our stereotypical inquiry tends to ask whether the defendant's forum-based activities are instrumental in the formation of the contract[.]"  Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998) (citation and internal quotation marks omitted).  The complaint in this case alleges both tort and contract claims, but the pleadings emphasize contract formation as the basis for Maine's jurisdiction.  This makes sense because Berry would be hard pressed to argue that his tort injuries would not have occurred "but for" the defendant's Maine based activities.  United Elec., Radio & Mach. Workers, 960 F.2d at 1089.  Instead, he argues that the defendants' solicitation of him in Maine and their subsequent e-mails to him led to the contract's formation and demonstrate that the defendants were transacting business in Maine.  This approach accords with First Circuit law.  See Hahn v. Vt. Law Sch., 698 F.2d 48 (1st Cir. 1983) (holding that a law school's purposeful actions of mailing application information and an acceptance letter to an applicant in Massachusetts were sufficient, without more, under the Massachusetts long-arm statute and, because of other activities generally associated with Massachusetts, were sufficient to comport with due process standards as well).   As was the case in Hahn, the record here reflects a great deal of background noise consisting of associations with the forum state.  The solicitation of Berry was no more an isolated contact with Maine than was the law school's solicitation activity in Hahn.  The defendants clearly were transacting business in Maine up until June 2007 and even after that date it appears, based upon the record developed here, that they kept an agent in Maine for purposes of service until some unknown date prior to June 21, 2008.  Additionally, when the

process in this case was mysteriously delivered to someone in Rumford, Maine, allegedly not connected with this corporate entity or Costa, that process nevertheless ended up with exactly the correct defendants.

The next step of the analysis requires the Court to determine whether the defendants "should reasonably anticipate being haled into court" in Maine. World-Wide Volkswagen, 44 U.S. at 297. In other words, the Court must be satisfied that the defendants purposefully availed themselves of the benefits and the protections of Maine's laws. This step is Berry's weakest link because the evidence plainly suggests that WorldWide, at least, has done everything it can to disassociate itself from the benefits and protections of Maine law. It has suspended its corporate status in Maine and moved its physical plant to North Carolina. In effect, WorldWide has attempted to purposefully un-avail itself of Maine's benefits and protections. Additionally, this case is unlike Maine Helicopters, supra, or Enqueue, Inc. v. Data Management Group, Inc., Civ. No. 07-38-B-W, 2007 U.S. Dist. Lexis 59737, 2007 WL 2343653 (D. Me. July 30, 2007) (Mag. J. Rec. Dec.), affirmed, 2007 U.S. Dist. Lexis 74823, 2007 WL 2916537 (Oct. 5, 2007), where the defendants could have anticipated that problems associated with contract performance would arise in the forum and thus could have anticipated that the party with whom they had contracted would bring suit there. Here, the defendants had no reason to anticipate that they would have any further forum contact after the formation of this contract because it was contemplated that the contract would be performed in Afghanistan. The prima facie case put forth by Berry does not even suggest that the defendants would have had reason to anticipate that Berry would return to Maine after the contract was completed. Indeed, the record suggests that he was scheduled to leave Maine and report to active duty in the military.

In my view, what allows Maine to assert personal jurisdiction over the defendants is not just the conduct of reaching into Maine to make this employment contract, but also the timing of that conduct coming right on the cusp of when WorldWide was in the process of removing itself from Maine.  These contacts with Maine during the formation of the employment contract were not "merely random, isolated or fortuitous contacts."  Hannon v. Beard, 524 F.3d 275, 284 (1st Cir. 2008) (quoting Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007)).   In the four years leading up to the litigation, the defendants appeared in at least four separate court cases in Maine and owned property in Maine (Costa continues to do so).  WorldWide also maintained a registered agent for service and a physical presence in the State, and enough of a continuing presence that a woman seated in an office in Rumford near where they used to do business was able to provide them with service documents.  Furthermore, when soliciting Berry to make this contract, according to Berry, the defendants noted their long-time ties to Maine.  On these facts, it comports with constitutional standards of due process to say that the defendants purposefully availed themselves of the benefits and protections of Maine law when they entered into the contract with Berry in the summer of 2007.  Alternatively, if the Court should find Berry's showing on relatedness and purposeful availment to be close but non-convincing, a strong showing on the gestalt factors may suffice to tip the scale in favor of exercising jurisdiction over the defendant.  Nowak, 94 F.3d at 717.

On that note, I turn to the "gestalt factors."   There is nothing unfair about the burden of requiring Costa and WorldWide to defend the suit in Maine.  Costa lives in close proximity to Maine.  Since Costa now lives in New Hampshire and has longstanding ties to Maine, including the continued ownership of real property, his burden of appearing in Maine is minimal.  The most obvious alternative forum, in any event, is Massachusetts, where WorldWide is

11

incorporated, a forum that would probably be equally inconvenient for both parties, but one likely to have more appeal for Berry than North Carolina. Berry, as the plaintiff, has an interest in obtaining convenient and effective relief and none of the other available forums would be likely to provide as great a convenience to him as Maine. There has been no showing made that essential witnesses are currently located in North Carolina or Massachusetts. If a Rule 30(b)(6) deposition becomes necessary during discovery, Berry may well be required to travel to corporate headquarters to conduct it, reducing the burden on WorldWide. Both North Carolina and Maine have an interest in this litigation. While it is true that North Carolina is now the site of WorldWide's corporate headquarters, Maine enjoyed that distinction in the very recent past and has at least a short term interest in insuring contract compliance by companies that have done business within its borders. On balance, the application of the five gestalt factors would favor the exercise of jurisdiction in Maine. I recommend the court assert personal jurisdiction over both Costa and WorldWide.[1]

**B.**    *Forum non conveniens*

The defendants' forum non conveniens argument does not fare any better. As the defendants acknowledge, many of the relevant witnesses will be at one of WorldWide's overseas locations. In the event Berry wants to take a Rule 30(b)(6) corporate deposition or depose other corporate officers, he may well have to travel to North Carolina to accomplish that objective, but that sort of issue can be addressed in the context of a discovery dispute, should the issue ever

---

[1] It is somewhat frustrating that the complaint speaks in terms of the defendants in each and every count, including the breach of contract/promissory estoppel count. As I indicated above, I have treated Costa and WorldWide jointly because both parties have used that approach in their pleadings and I can see no practical way to parse the contacts separately myself. This is not a case where the complaint provides differing allegations for one defendant from the other, although it seems unlikely to me that the contract in question was signed by Costa individually. Costa's contacts with this forum, including his continuing ownership of property and the mysterious relationship with the woman in the storefront office in Rumford, coupled with his reliance upon his Maine presence in the course of soliciting Berry's employment, almost invite one to explore a general jurisdiction analysis, but the existing record is insufficient to undertake such a quest.

arise. Maine is more convenient for Berry, North Carolina is more convenient for WorldWide – that happens often in litigation and the plaintiff's choice of forum usually prevails, as it should in this case.

**C.     Insufficiency of service of process**

Finally, the defendants note the service of process in this case is woefully deficient. They are correct. WorldWide has never been served and Costa was not properly served under Maine or Federal law. The case has now been removed to this Court; clearly both defendants have actual notice of the lawsuit. Pursuant to Rule 4 of the Federal Rules of Civil Procedure, the defendants have an obligation to waive service if requested to do so and their failure to do so can result in them having to bear the costs of service. The case was filed in this Court on May 15, 2008, and the plaintiff normally has 120 days after the case is opened to accomplish service. If the parties are unable to sort out this issue or if Berry fails to make proper service on the defendants by the time an answer is purportedly due (which pursuant to Rule 12(a)(4)(A) would be 10 days after this recommended decision is affirmed, if indeed it is ever affirmed), the issue will be back before the Court if Berry moves for default. If the recommended decision is rejected, the issue of service is moot because there is no personal jurisdiction over the parties. At this juncture this issue regarding the sufficiency of the service of process in this *removed* case does not warrant the dismissal of the action.

### Conclusion

Based upon the foregoing, I recommend the motion to dismiss be denied.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the

district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

   Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

             /s/ Margaret J. Kravchuk
             U.S. Magistrate Judge

Dated July 10, 2008